**NORTHERN OIL COMPANY, Inc., Plaintiff-Appellee,**

v.

**SOCONY MOBIL OIL COMPANY, Inc., Defendant-Appellant.**

**No. 28, Docket 30371.**

United States Court of Appeals Second Circuit.

Argued Oct. 3, 1966.

Decided Nov. 10, 1966.

Albert W. Coffrin, Burlington, Vt. (Douglas C. Pierson, Burlington, Vt., on the brief), for defendant-appellant.

Louis Lisman, Burlington, Vt. (John G. Kissane, St. Albans, Vt., Lisman & Lisman, Burlington, Vt., on the brief), for plaintiff-appellee.

Before SMITH, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

This is an appeal by defendant Socony Mobil Oil Company, Inc. ("Socony") from a judgment against it for $72,000 in an action for malicious prosecution. A prior judgment of $95,000 for plaintiff Northern Oil Company, Inc. ("Northern") was reversed by this court because of an erroneous evidentiary ruling. 347 F.2d 81 (2d Cir. 1965). Finding no error in the retrial, we affirm.

Briefly, the jury could have found the following facts: In the summer of 1960, Socony decided to discontinue operations at St. Albans Bay, Vermont, where it had tanks for the storage of petroleum products. Socony accepted an offer from Massena Iron & Metal Company ("Massena") to buy the tanks. The parties agreed to dismantle the tanks for transportation to possible buyers from Massena, but there was no requirement that the tanks be used only for scrap by such a future purchaser. Northern bought the tanks from Massena to operate its own tank "farm" in the St. Albans Bay area. Socony brought suit in October 1960 in a Vermont chancery court against both Northern and Massena to prohibit use of the tanks for storage; Socony alleged that Massena had contracted that the tanks would not be so used. In actuality, Socony did not think it would win the lawsuit; its motive was to prevent Northern from competing with it in the area. On the same day Socony brought its action, the state court chancellor granted a temporary injunction requested by Socony pending a later

hearing; the injunction prohibited removal of the tanks from Socony's premises unless they were cut up for scrap. As a result, Northern was unable to use the tanks until almost three years had elapsed. In 1963, after a hearing, the temporary injunction was dissolved and the permanent injunction was denied. The sufficiency of the evidence to support the verdict below of damage caused by malicious prosecution [1] is not disputed.

All but one of Socony's points on appeal relate to evidentiary rulings. The most troublesome is whether the trial court erred in excluding evidence of the condition of the tanks; Socony claims this evidence would have proved that it instituted the chancery suit in October 1960 not out of malice but because of "genuine apprehension as to the consequences of the removal and re-use of 35 year old storage tanks." Judge Gibson based his ruling on the collateral estoppel effect of the findings of the chancellor; these, *inter alia*, were that Socony sold the tanks in August 1960 because it "wanted to close down an uneconomical operation and not because of a safety consideration" and that Socony itself had been using the tanks "for the purpose for which they were intended to be used." We need not decide, however, whether the district judge correctly applied the doctrine of collateral estoppel to this aspect of the case. During his opening statement to the jury, counsel for Socony stated:

Our evidence will tend to show that the tanks were 35 years old and that we considered—and leaked.

We considered them very dangerous. That is why—

Counsel for Northern thereupon objected on the ground that the chancellor's findings foreclosed this argument. The following colloquy then took place:

THE COURT: Yes, I have ruled that before, what the Chancellor found

---

1. Reference should be made to our prior opinion, 347 F.2d 81, for the Vermont law of malicious prosecution.

as fact, is final, as far as this Court is concerned.

MR. FEEN [for Socony]: Well, I am not opposing it at all.

THE COURT: Well, all right.

MR. FEEN: I am not. * * *

Thus, at the very outset of this retrial, when Socony was presenting its theory of the case, it did not oppose a ruling of the court that the chancellor's findings precluded proving that Socony was concerned with the condition of the tanks for safety reasons. Thereafter, according to the record before us, when the court made the exclusionary rulings Socony now complains of, it did not adequately explain to the court why it believed the collateral estoppel doctrine was being misapplied,[2] or the relevance of its questions, even when directly asked by the trial judge.[3] Under these circumstances, we find no error in the exclusionary rulings. Cf. United States v. Vater, 259 F. 2d 667, 672 (2d Cir. 1958). Also on the issue of motive, Socony claims it was prevented from showing that it acted on the advice of counsel when it sued in the state court. However, Socony calls to our attention only one question, addressed to Socony's Division Attorney; he was asked only if he had advised Socony of the possibility of Socony's liability for injuries arising from further use of the tanks. The question did not directly deal with advice as to the institution of the lawsuit, which might have been a defense, and Socony made no offer of proof at all on this issue.[4]

Appellant also finds error in Judge Gibson's prohibiting its use of the record of a contempt proceeding arising out of the state court litigation. As indicated above, after three years Northern won that litigation. The chancellor in August 1963 decreed that Northern properly owned the tanks and could use them for any lawful purpose, ordered Socony to make them available and directed Northern to remove them from Socony's property within a designated period. After Northern failed to remove the tanks, it was held in contempt in August 1965. Socony claims that the adjudication of contempt would have seriously weakened Northern's claim of damage and impeached Northern's principal executive officer. Judge Gibson excluded the findings in the contempt proceeding, but he did admit evidence of Northern's failure to remove the tanks, although ordered to do so, and its asserted justification for not doing so. Socony claims that the latter issue could not be relitigated by Northern and that Socony was entitled to introduce as binding upon Northern the chancellor's findings and order in the contempt proceeding. However, the trial court held that in this instance collateral estoppel was inapplicable because the contempt order was still under appeal; Socony attacks both this ruling and the exclusion of any reference to the contempt proceeding.

Under all the circumstances, we do not think Judge Gibson committed reversible error. As to the issue of estoppel, courts differ as to whether the pendency of an appeal necessarily deprives a judgment of collateral estoppel effect. See 2 Freeman, Judgments § 722 (5th ed. 1925). Whatever may be the better rule, the issue in this diversity suit tried in Vermont is what effect the courts of Vermont would give to the judgment of contempt after an appeal has been taken. See Gramm v. Lincoln, 257 F.2d 250, 255 (9th Cir. 1958); Comment, Res Judicata in the Federal Courts: Application of Federal or State Law: Possible Differences Between the Two, 51 Cornell L.Q. 96–97 (1965). Vermont case law does not appear to give an authoritative answer, but Vermont has an unusual statute which automatically stays execution of a judgment pending

---

2. Some of the questions explored the state of mind of Northern, not Socony, and none of them in terms related to why Socony started the suit.

3. Record, p. 82.

4. It should also be noted that the chancellor found that Socony had protected itself against liability by an indemnity agreement with Massena.

the time for filing an appeal.[5] Vt.Stat. Ann. tit. 12, § 2387 (Supp.1965).[6] It may well be that Vermont courts would construe this statute as depriving a judgment of any effect while an appeal is pending. See Walker v. Walker, 123 Vt. 430, 192 A.2d 460 (1963) (compliance with order may be foregone pending disposition of appeal). We have held that a reasonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel, McNellis v. First Federal Sav. & Loan Ass'n, 364 F.2d 251, 257 (2d Cir. 1966); we feel that a reasonable doubt as to the effect the rendering jurisdiction would give its own judgment should be similarly resolved. Therefore, Judge Gibson's refusal to allow Socony to attribute binding effect to the contempt findings was not erroneous. There still remains the issue of whether barring any reference to the contempt proceeding was correct. As to this, the judge's ruling did not prevent Socony from showing that Northern did not remove the tanks, although ordered to do so. Under these circumstances, the possibilities of prejudice inherent in revealing to the jury a judgment of contempt placed that issue well within a trial judge's discretion.

■ Socony's other arguments on this issue are without merit. Despite Socony's assertion to the contrary, the Supreme Court of Vermont has not held that the contempt order against Northern is final for collateral estoppel purposes; to the contrary, in February 1966 (two months after the second trial in the malicious prosecution action) that court denied Socony's motion to dismiss Northern's appeal from the contempt order. Socony Mobil Oil Co. v. Massena Iron & Metal Co., 125 Vt. 403, 217 A.2d 56 (1966). Finally, Socony's claim that the findings of fact in the contempt case should have been admitted because only questions of law can be heard on the appeal is without merit; whether findings of fact are supported by the evidence is a question of law in Vermont. Leno v. Meunier, 125 Vt. 30, 209 A.2d 485 (1965); Vt.Stat.Ann. tit. 12, § 2385 (Supp.1965).

■ The remainder of appellant's points can be disposed of briefly. At the retrial, unlike the original trial, there was sufficient evidence to establish the authority of Socony's District Manager to make the admission introduced against Socony; moreover, evidence of his salary was relevant to his authority to speak for the corporation. Socony complains that it was prevented from proving that it did not intentionally delay the state injunction proceedings. However, the trial judge stated in the presence of the jury that there was no finding in the state court proceeding that Socony delayed that litigation, and Northern's chief executive officer apparently testified that Socony made no effort to delay. Under these circumstances, the trial judge's exclusionary rulings were within his discretion or at most harmless. Finally, comity does not require abstention by the federal court from assuming jurisdiction simply because of the pending contempt proceeding. The action in the federal court for malicious prosecution and the contempt proceeding in the state chancery court were different matters; the chancery court has never assumed jurisdiction over the former.

The judgment is affirmed.

5. Contrast, e. g., Fed.R.Civ.P. 73(d); Iowa R.Civ.P. 337(c); N.Y. CPLR § 5519. See 4 Am.Jur.2d Appeal and Error § 365 (1962); 4A C.J.S. Appeal & Error § 626 (1957) (in most states, appeal does not *ipso facto* stay judgment).

6.

In civil actions or proceedings, (except in a justice court) execution shall be stayed pending the time for filing and after filing the notice of appeal. When a notice of appeal is not filed within the time required, the clerk shall issue execution and the date on which the time for filing expires shall be deemed the date on which the plaintiff is first entitled to execution.